## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

RONALD KEITH BISHOP,      )
            )
         **Petitioner,**      )
            )
         **vs.**      )      **Case No. CIV-08-1358-HE**
            )
ERIC FRANKLIN,      )
            )
         **Respondent.**      )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition and the state court transcripts ("Tr."). Petitioner has filed a reply to the response, and a supplement to the record,[1] and thus, the case is at issue. For the reasons set forth herein, it is recommended that the petition be denied.

### I. Factual Background and Procedural History

---

[1] Petitioner seeks leave to expand the record pursuant to Rule 7, Rules Governing Section 2254 Cases, to include a copy of the application for post-conviction relief and motions he filed in the district court during his post-conviction proceeding, noting that Respondent has not included such documents in the response. [Doc. No. 29]. Rule 7 allows the record in a federal habeas proceeding to be expanded with "letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge" and "[a]ffidavits . . . ." The undersigned has considered Petitioner's application for post-conviction relief as part of the record in this case, and therefore recommends that Petitioner's motion (hereinafter Petitioner's Supplemental Reply) be granted to that extent.

At approximately 6:30 a.m. on May 6, 2005, Mr. Fernando Wallace was finishing his night shift as a clerk at a 7-Eleven store at 2323 North Pennsylvania in Oklahoma City, when a man Wallace knew and identified as Petitioner came into the store wearing black clothing and a black stocking cap. Tr., pp. 59-60. After the other customers left the store, Petitioner came around the counter and behind the cash register, showed what appeared to be a gun and demanded that Wallace open the cash register, which he did.[2] Tr., pp. 60-61. Petitioner pulled dollar bills out of the cash register,[3] walked out the door, got into a vehicle and drove away. Tr., pp. 61-62. Wallace immediately called 911 and gave a description of Petitioner and his vehicle and the direction Petitioner had driven. Tr., pp. 72-73. The 7-Eleven videos captured images of Petitioner in the store before the customers exited and an image of Wallace on the phone as Petitioner exited the store. Tr., pp. 66- 67 and State's Exs. 1, 2 and 3.

Officer Chad Kinder and Officer Harvey Moore responded separately to a dispatch call regarding a robbery at the 7-Eleven. Tr., pp. 87, 89. On the way to the store, both officers observed a vehicle fitting the description given to them, and further noted that the driver – a black male wearing a black stocking cap and a black jacket – also matched dispatch's description. Tr. pp. 90; 121. Both officers pursued Petitioner and a lengthy car chase began. Tr., p. 91.

---

[2]Wallace testified that he saw what appeared to be a six-inch black gun with a clip, not a revolver. Tr., pp. 71, 80.

[3]The clerk told police that $46.00 was taken by Petitioner. Tr., p. 70.

When all three cars stopped at a stop light, Officer Kinder yelled to the driver to show his hands, but Petitioner accelerated his vehicle and a female passenger exited the car as Petitioner was taking off. Tr., pp. 94; 122-23. Both officers chased Petitioner at 70-80 miles per hour through residential neighborhoods with posted speed limits of 25 miles per hour. Tr., pp. 95-96. The chase progressed across several busy intersections and congested streets. Tr., pp. 101-03. Petitioner then entered an interstate highway and drove erratically, still speeding. Tr., p. 105. He eventually exited the interstate, left his vehicle and began running on foot. Tr., pp. 106-07; 126; 133. Other officers joined in a foot pursuit, which ended when Petitioner, who was running while looking over his shoulder, ran into the street in front of an oncoming patrol car and was injured. Tr. pp. 127; 133-36. Petitioner was taken to the hospital. Tr., p. 127. Officers found a black leather jacket and a black "do-rag" in Petitioner's vehicle, but no gun was found. Tr., p. 142.

Detective Jeff Wooliver went to the University of Oklahoma Medical Center, where Petitioner was hospitalized, about mid-day May 7, 2005, and read Petitioner his Miranda rights. Tr., p. 149. Petitioner agreed to waive those rights and he talked to Wooliver about the facts surrounding the robbery and the pursuit. Tr., pp. 151-158.

Petitioner was tried on charges of robbery with a firearm, in violation of Okla. Stat. tit. 21, § 801[4] (Count One), and aggravated attempting to elude a police officer, in violation

---

[4]The statute under which Petitioner was charged provides in pertinent part:

Any person or persons who, with the use of any firearms or any other

(continued...)

of Okla. Stat. tit. 21, § 540A(B) (Count Two). Case No. CF-2005-2736, District Court of Oklahoma County. In a bifurcated proceeding, the jury found Petitioner guilty of the charged offenses. In the second stage the jury found Petitioner had been previously convicted of two or more felonies and recommended a sentence of fifty-five years imprisonment on Count One and twenty-five years imprisonment on Count Two. The trial court sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to be served consecutively.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA) raising the following claims: (1) he was denied due process of law by the introduction into evidence of his involuntary statement made while under the influence of morphine; (2) the trial court erred by failing to instruct the jury on the lesser included offense of attempt to elude a police officer; and (3) he received an excessive sentence. Response, Ex. 1. The OCCA denied all three grounds and affirmed Petitioner's convictions and sentences.

---

[4](...continued)
dangerous weapons, whether the firearm is loaded or not, or who uses a blank or imitation firearm capable of raising in the mind of the one threatened with such device a fear that it is a real firearm, attempts to rob or robs any person or persons, or who robs or attempts to rob any place of business, residence or banking institution or any other place inhabited or attended by any person or persons at any time, either day or night, shall be guilty of a felony . . . .

Okla. Stat. tit. 21, § 801.

Section 801 allows for the consideration of a victim's subjective belief that the weapon used is a firearm. *Lambert v. State*, 984 P.2d 221, 233 (Okla. Crim. App. 1999).

Response, Ex. 3 (OCCA Summary Opinion).

Petitioner then sought post-conviction relief, raising the following four claims: (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; (3) the trial court erred by failing to instruct the jury on the "85% law"; and (4) cumulative error. Petitioner's Supplemental Reply, attached Application for Post-Conviction Relief (Case No. CF-2005-2736). The district court denied Petitioner's application for post-conviction relief. Response, Ex. 4 (Oklahoma County District Court Order Denying Post-Conviction Relief). The OCCA affirmed, finding all issues other than Petitioner's claim of ineffective assistance of appellate counsel procedurally barred. Response, Ex. 6, p. 2 (OCCA Order Affirming Denial of Post-Conviction Relief). The OCCA found Petitioner's claim of ineffective assistance of appellate counsel to be without merit. *Id.*, p. 3.

## II. Petitioner's Grounds for Federal Habeas Relief

Petitioner brings seven grounds for federal habeas corpus relief based on: (1) introduction of evidence obtained in violation of his Fifth Amendment right against self-incrimination; (2) failure to instruct on lesser included offense; (3) excessive sentence; (4) ineffective assistance of appellate counsel; (5) ineffective assistance of trial counsel; (6) failure to instruct on parole eligibility; and (7) cumulative error.

## III. Standard of Review

When a petitioner's claims have been adjudicated on the merits in state court, a federal court may grant habeas corpus relief only if the petitioner establishes that the state court decision "was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable'") (quoting *Aycox v. Lytle*, 196 F.3d 1174 (10th Cir. 1999)).

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)), *cert. denied*, 129 S.Ct. 1345 (2009). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (quoting *Maynard*, 468 F.3d at 671)). In conducting this deferential inquiry, the Court presumes that the state court factual findings

are correct, and the burden of rebutting this presumption by clear and convincing evidence is placed on the petitioner. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

When the state appellate court has not addressed the merits of a claim, the federal courts must "exercise [their] independent judgment in deciding the claim." *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).

IV.   Analysis

   A. Claims Raised on Direct Appeal- Grounds One, Two and Three

   1. *Miranda* Violation - Ground One

In Ground One Petitioner contends that he did not knowingly and intelligently waive his *Miranda*[5] rights, and therefore his due process rights were violated by the introduction of the statements he made to Detective Wooliver on the day following the robbery while he was in the hospital. Petition, p. 5. Petitioner asserts that his robbery conviction was based on Detective Wooliver's testimony that Petitioner admitted that "he had a jack handle that resembled a firearm"and that "he and the clerk, Wallace, had a plan to rob the 7-Eleven." Petition, p. 5 (citing Tr., pp. 156-57).[6]  As on direct appeal, Petitioner argues that he was under the influence of morphine and other pain medications during the interview with Wooliver, rendering him incapable of voluntarily waiving his *Miranda* rights. *Id.*

---

[5]*Miranda v. Arizona* 384 U.S. 436 (1966).

[6]Detective Wooliver's testimony regarding Petitioner's statement that he had a jack handle which looked like a gun is actually found at Tr., p. 155.

The trial court held a *Jackson v. Denno*[7] hearing on the morning of trial to determine the admissibility of Petitioner's statements. Tr., pp. 11-31. After considering evidence presented by both the State and Petitioner, including the audiotape of the interview, the court determined that Petitioner had been advised of his *Miranda* rights and that Petitioner had knowingly and voluntarily waived these rights when he agreed to speak with Detective Wooliver on May 7, 2005, without the presence of counsel. Tr., p. 30-31.[8] The court therefore overruled Petitioner's objection, and Wooliver was allowed to testify regarding Petitioner's statements.[9]

In rejecting Petitioner's challenge on direct appeal to the admission of his statements on direct appeal, the OCCA found that "the trial court's ruling that Mr. Bishop's confession

---

[7]Pursuant to the Supreme Court's holding in *Jackson v. Denno*, 378 U.S. 368 (1964), when a defendant objects to the introduction of his statement as involuntary, due process requires a trial judge to make an independent determination that the statement is voluntary before permitting it to be heard by the jury. Because Petitioner's claim challenges the trial court's decision to admit Detective Wooliver's testimony regarding Petitioner's statement, the relevant citations to the record are from that hearing. Tr., pp. 12-26.

[8]The trial court specifically found that although Petitioner's answers and speech were slow, as reflected on the audio tape of his interview with Detective Wooliver, the answers Petitioner gave were "clear, coherent and seem to be appropriate responses to the direct questions." Tr., pp. 30-31. The trial court further found that there was no evidence that Petitioner hesitated in agreeing to talk to Wooliver. *Id.*, p. 31.

[9]Wooliver testified that Petitioner initially focused on the high speed chase but also told him about the facts of the robbery, including his going into the 7-Eleven, taking money, and running from the police. Tr., pp. 19, 24. Petitioner told Wooliver that as he was fleeing the scene, he picked up a female and gave her a brief ride. *Id.* at 19. When the officers began pursuing him, he put her out of the car and continued to flee in his vehicle until he ultimately exited the vehicle and fled on foot. *Id.* Wooliver noted that Petitioner's statements were consistent with the officer's understanding of the facts regarding the robbery. Tr., pp. 19-20.

was voluntarily made was supported by evidence that although he had been administered pain medication, Mr. Bishop demonstrated an apparent ability to understand the situation and the questions asked by the police as well as an ability to answer the questions with clarity and specificity." Response, Ex. 3, p. 2 (citing *Coddington v. State*, 142 P.3d 437, 448 (Okla. Crim. App. 2006)[10]).

In *Miranda*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Accordingly, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* These rights are waivable, but to be effective, a waiver must be made "voluntarily, knowingly, and intelligently." *Id.* The Supreme Court has held that a court's inquiry into a waiver's validity has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the

----

[10]In *Coddington*, the OCCA applied the United States Supreme Court's decisions in *Miranda v. Arizona,* 384 U.S. 436, 444 (1966*), Colorado v. Spring*, 479 U.S. 564 (1987), and *Moran v. Turbine*, 475 U.S. 412 (1986), in determining that the defendant had been provided his *Miranda* rights which he waived and that under the totality of the circumstances his confession was uncoerced and exhibited the requisite level of comprehension. *Coddington*, 142 P.3d at 447-48.

circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citations and quotations omitted). The Tenth Circuit has explained that the "totality of the circumstances" may include the crucial element of police coercion, the length of the interrogation and its continuity, the defendant's maturity, education, physical condition, and mental health, and the failure of the police to advise the defendant of his rights to remain silent and to have counsel present during the custodial interrogation. *Trice v. Ward*, 196 F.3d 1151, 1170 (10th Cir. 1999) (internal quotations omitted) (quoting *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993)). *See also Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause.").

The relevant circumstances demonstrate that Petitioner voluntarily waived his *Miranda* rights. Detective Wooliver, who interviewed Petitioner at the hospital about noon on May 7, 2005, testified at the *Jackson v. Denno* hearing that he advised Petitioner of his *Miranda* rights by reading these rights to him from a standard form before beginning the interview. Tr., p. 15. Wooliver testified that after reading the *Miranda* warning, he asked Petitioner if he understood those rights, and Petitioner stated that he understood and that he would talk with the detective. Tr., pp. 15-16. Wooliver also testified that Petitioner knew that the interview was being tape recorded, and at no time during interview did Petitioner ask

for an attorney. Tr., pp. 17-18.[11] Wooliver testified that Petitioner's answers appeared to be rational, and based on his training and experience, he determined Petitioner's statement was voluntary. Tr., pp. 16-18.

The circumstances must also demonstrate that Petitioner waived his right to remain silent with a "requisite level of comprehension." *Moran*, 475 U.S. at 421. "For a waiver to be knowing and intelligent, it 'must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Smith v. Mullin*, 379 F.3d 919, 933 (10th Cir. 2004) (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)). "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 574 (1987). "So long as petitioner understood the basic principles that he had the right to remain silent and whatever he said could be used against him, his waiver was constitutionally adequate." *Wacker v. State of Kansas*, No. 99-3069, 2000 WL 123756, at *3 (10th Cir. Feb. 2, 2000) (unpublished op.).

The record shows that when Detective Wooliver read the *Miranda* safeguards, Petitioner did not ask any questions or give any indication that he did not understand what was being read. Wooliver described Petitioner as talking clearly, initiating discussion about

---

[11]Detective Wooliver stated that the circumstances for recording were not ideal because he was unable to place the recorder as close to Petitioner as he would have liked. Tr., p. 17. At trial, when the State moved to admit the tape of the recorded interview, Detective Wooliver agreed that some parts of the interview were difficult to hear. Tr., pp. 186-87 (admitting State's Ex. 6).

certain events concerning the robbery and chase, and giving descriptions before being asked. Tr., p. 25. Petitioner made Detective Wooliver aware that he had been given pain medications, including morphine. Tr., p. 22. Wooliver testified that Petitioner spoke slowly when answering questions but his speech was not slurred, and it never appeared that he was not understanding what was going on because the drugs were affecting his answers. Tr., pp. 19, 26. Wooliver saw no evidence that Petitioner was hampered by the affects of any drugs. Tr., p. 19.

The fact that Petitioner was being given certain pain medications, while relevant to the consideration, without more, fails to show that his waiver was not knowingly and intelligently made. *See Elliott v. Williams*, 248 F.3d 1205, 1212-13 (10th Cir. 2001) (fact that petitioner had taken heroin did not impair his ability to give a voluntary statement); *United States v. Morris*, 287 F.3d 985, 989 (10th Cir. 2002) (rejecting gunshot victim's claim of FBI coercion where FBI took care in determining whether victim's medical condition would impair his ability to answer questions); *United States v. Hack*, 782 F.2d 862, 866 (10th Cir. 1986) (concluding statements made two days after gunshot wound to defendant's mouth while defendant was still in pain were voluntary); *see also United States v. Minard*, 208 Fed. Appx. 657, 661 (10th Cir. Dec. 12, 2006) (holding defendant's mental state, pain medication level, and pain intensity level did not negate his ability to knowingly and intelligently waive his Fifth Amendment rights during police interrogation that took place in hospital three days after he had been shot; defendant, a 37-year-old man with an eleventh grade education and several prior felony convictions, had no difficulty understanding the waiver and its

implications).

In sum, the totality of the circumstances surrounding Petitioner's interview demonstrates both an uncoerced choice and the requisite level of comprehension. On this record, the undersigned finds that Petitioner knowingly and voluntarily waived his *Miranda* rights. Therefore, the determination of the state court that Petitioner's waiver of rights and statement to the police were made knowingly and voluntarily was reasonable in light of the evidence presented, and the OCCA's adjudication of Petitioner's Fifth Amendment claim did not result in a decision that is either contrary to or an unreasonable application of clearly established federal law. Petitioner is not entitled to habeas relief on Ground One.

2. <u>Lesser Included Offense Instruction - Ground Two</u>

In his second ground for relief, Petitioner alleges that the trial court violated his due process rights by failing to instruct the jury on the lesser-included offense of attempt to elude a police officer. Petition, p. 5. The OCCA rejected this claim on Petitioner's direct appeal. The court found, under state law, that because "the uncontroverted evidence showed that Mr. Bishop's attempt to elude the police endangered the lives of others, an instruction on the lesser-included offense was not warranted." Response, Ex. 3, p. 2 (citing *Shrum v. State*, 991 P.2d 1032 (Okla. Crim. App. 1999)).

The Supreme Court has stated on many occasions that the federal writ of habeas corpus reaches only convictions obtained in violation of the United States Constitution, federal laws, or treaties. *See e.g., Mabry v. Johnson*, 467 U.S. 504, 507 (1984); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Phillips*, 455 U.S. 209, 221 (1982). Thus, "it is not

the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995). The Supreme Court has not recognized a federal constitutional right to a lesser-included offense instruction in a non-capital case. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). In this circuit, courts follow an "automatic non-reviewability" rule "for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004); *accord Tiger v. Workman*, 445 F.3d 1265, 1268 (10th Cir. 2006); *see also Lujan v. Tansy*, 2 F.3d 1031, 1036 (10th Cir. 1993) ("[A] petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction, even if in [the court's] view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense.") (internal quotations omitted). Consequently, Petitioner has not shown that the OCCA's rejection of this claim is contrary to or an unreasonable application of clearly established federal law, and he is not entitled to habeas relief regarding this claim.

3. Excessive Sentence - Ground Three

Petitioner alleges that consecutive sentences totaling eighty years of imprisonment are

excessive. Petition, p. 6. Petitioner contends that because of the 85% Rule,[12] he will be age 92 before he begins serving his twenty-five year sentence for Count Two. *Id.* On direct appeal, Petitioner asserted although he was charged with serious crimes, "the fact remains that no one suffered any injury, except Mr. Bishop himself," and thus "under the facts and circumstances of the case," his sentences are "excessive, grossly disproportionate, constitutionally impermissible, cruel and/or unusual punishment." Response, Ex. 1, pp.14-15. Petitioner has not disputed, however, that his sentence are within the range established by Oklahoma law.

In considering this claim on direct appeal, the OCCA noted that Petitioner's sentences were "well within the range prescribed by statute." Response, Ex. 3, p. 2. The OCCA determined that "[g]iven the fact that robbery is a violent crime and aggravated attempt to elude an office is potentially dangerous to others, as well as the fact that [Petitioner] had three prior felony convictions," the sentences imposed did not "shock the conscience" and were not excessive. *Id.* Respondent argues that Petitioner's sentencing claim is a matter of state law that presents no issue for federal habeas review because Petitioner's sentences are within the prescribed ranges. Response, pp. 19-20.

The OCCA rejected Petitioner's challenge to his sentence as excessive, and it appears

---

[12]Under Oklahoma law, a person who has committed certain enumerated statutory offenses must serve 85% of his sentence before being eligible to be considered for parole (the "85% Rule"). *See* Okla. Stat. tit. 21, §§ 12.1 and 13.1 (Supp. 2000). The crime of robbery with a firearm (Count One) is a listed offense, making the 85% Rule applicable to this offense. *See* Okla. Stat. tit. 21, § 13.1(8).

the court did so based solely on principles of state law. See Response, Ex. 3, p. 2. (citing *Rea v. State*, 34 P.3d 148 (Okla. Crim. App. 2001 )).[13]   Absent a decision on the merits of Petitioner's federal claim, this Court owes no deference to the OCCA's decision. *Hain*, 287 F.3d at 1229.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (citation and internal quotations omitted). The proportionality principle, however, "reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003). *See also United States v. Gillespie*, 452 F.3d 1183, 1190-91 (10th Cir. 2006) (summarizing Supreme Court precedent on the proportionality principle and noting that "the [Supreme] Court has only twice invalidated a sentence under the Eighth Amendment: once in 1910, when the defendant was sentenced to fifteen years in chains and hard labor for falsifying a public document; and most recently in 1983, when the defendant was sentenced to life without parole after committing six nonviolent felonies including writing a bad $100-dollar check") (citations omitted). Tenth Circuit case law recognizes that an Eighth Amendment violation may occur where there is "gross disproportionality between a defendant's sentence and his crime." *Milburn v. Hines*, 146 Fed.Appx. 269, 272 (10th Cir. Aug. 17, 2005) (citing *Hawkins v. Hargett*, 200 F.3d 1279,

---

[13]In *Rea*, the OCCA applied a "shocks the conscience" standard to determine whether a punishment was excessive. The OCCA expressly rejected the appellant's suggestion to abandon the shocks the conscience standard in favor of a proportionality review. *Rea*, 34 P.3d at 149.

1284-85 (10th Cir. 1999)).  However, the Court in *Hawkins* acknowledged a reluctance "to interfere with the legislative determination of an appropriate sentence range."  *Hawkins*, 200 F.3d at 1284 (citing *Rummel v. Estelle*, 445 U.S. 263 (1980)).

Here, Petitioner was found guilty of two or more prior felony convictions.[14]  Tr., p. 266.  Under Oklahoma's habitual offender statute, Okla. Stat. tit. 21, §51.1(B), the minimum sentence Petitioner could receive for robbery with a firearm was twenty years and the maximum sentence was life imprisonment, and therefore his fifty-five year sentence was within statutory range.  As to aggravated attempt to elude a police officer, the minimum sentence for a habitual offender was three years imprisonment with a maximum sentence of life imprisonment; thus, the twenty-five year sentence was also within the applicable statutory range.  Okla. Stat. tit. 21, § 51.1(C).  As a recidivist offender, Petitioner's sentences are not disproportionate.  *See Ewing v. California*, 538 U.S. at 29 (stating that the proportionality review should include consideration of the defendant's history of felony recidivism).  Further, Petitioner's crimes of robbery with a firearm and aggravated attempt to elude a police officer (by speeding through a residential neighborhood at approximately 70 miles per hour) are serious crimes for which the punishment imposed cannot be said to be disproportionate.  *See Hawkins v. Hargett*, 200 F.3d at 1284 (holding that a habeas

---

[14]In the second stage of trial the State introduced certified judgments and sentences establishing that Petitioner had been convicted of the following felonies in Oklahoma County District Court:  concealing stolen property, Case No. CF-87-5930; larceny of merchandise from a retailer after former conviction of a felony, Case No. CF-88-500; and first degree rape after former conviction of a felony, Case No. CF-90-4840.  Tr., pp. 249, 251-53.

petitioner's 45-year sentence for robbery with a dangerous weapon was not grossly disproportionate to the offense in part because the crime was "serious, involving a deadly weapon"). Additionally, Petitioner has the availability of parole, even though he must serve 85% of his sentence in Count One before he is eligible for parole to his sentence in Count Two. *See Hawkins*, 200 F.3d at 1284 (availability of parole is relevant but not determinative as to whether the length of the sentence violates the Eighth Amendment). In light of Supreme Court precedent on the disproportionality principle and the fact that Petitioner's sentences are within the statutory range of punishment permitted under Oklahoma law, the undersigned concludes that Petitioner's sentences, even in the aggregate, are not grossly disproportionate to his crimes. Petitioner fails to present the extraordinary case required to establish a violation of his Eighth Amendment rights. The claim raised in Ground Three of the petition, therefore, should be denied.

B. <u>Claims Not Raised on Direct Appeal - Grounds Four Through Seven</u>

In Grounds Four through Seven, Petitioner brings claims raised for the first time in his application for post-conviction relief. Petition, pp. 6-8; *see also* Petitioner's Supplemental Reply, attached Application for Post-Conviction Relief, Case No. CF-2005-2746, filed June 12, 2008. The state district court denied Petitioner's application for post-conviction relief, and the OCCA affirmed the denial. Response, Exs. 4 & 6. Although Respondent argues that Grounds Five, Six and Seven are procedurally barred, the merits of all of Petitioner's claims have nonetheless been addressed in response to Petitioner's claims of ineffective assistance of trial and appellate counsel. Response, p. 21. The undersigned

agrees that with the exception of Petitioner's ineffective assistance of appellate counsel claim in Ground Four, the claims Petitioner raises in Grounds Five through Seven are likely procedurally barred because Petitioner did not raise them on direct appeal and the OCCA refused to review them in post-conviction proceedings pursuant to Okla. Stat. tit. 22, § 1086. *See Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir. 1994).

"When questions of procedural bar are problematic, . . . and the substantive claim can be disposed of readily, a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits." *Cannon v. Mullin*, 383 F.3d 1152, 1159 (10th Cir. 2004); *see also Snow v. Sirmons*, 474 F.3d 693, 717 (10th Cir. 2007) (overlooking applicability of procedural bar because merits of claim had to be addressed as part of evaluation of ineffective assistance of appellate counsel claim asserted as cause to excuse procedural default). Because Petitioner's remaining claims, raised as both independent grounds of relief and asserted as instances of counsel's ineffectiveness, are easily disposed on their merits, and since Respondent has briefed the merits of all of Petitioner's claims, the undersigned has chosen to bypass the procedural bar issues and recommends that the petition be denied on its merits.

Because the following claims have not been adjudicated on the merits by the state appellate court, this Court must exercise its independent judgment as to the merits of such claims. *Hain*, 287 F.3d 1224 at 1229.

1. Ineffective Assistance of Trial Counsel - Ground Five

In his fifth ground for relief, Petitioner claims he was denied the effective assistance

of trial counsel. Petition, p. 7. In order to establish a claim of ineffective assistance of counsel, Petitioner must show counsel's performance was deficient and it prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient assistance of counsel is representation that "[falls] below an objective standard of reasonableness." *Id.* at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Prejudice to the defense "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* Because both deficient performance and prejudice must be established to prove ineffective assistance, it is appropriate to consider whether prejudice has been shown without determining whether counsel's performance was deficient. *Id.* at 697.

To the extent Petitioner's claim alleges that counsel was ineffective for failing to object to the admission of the statements he made to Detective Wooliver, the record reflects Petitioner's counsel did, in fact, object and the court overruled such objection. Tr., p. 31. As discussed in connection with Ground One, a *Jackson v. Denno* hearing was held as to whether Petitioner's statements were knowing and voluntary. After presentation of evidence and review of the May 7, 2005, tape recorded interview, the trial court determined that based

on the totality of the circumstances Petitioner knowingly and voluntarily waived his *Miranda* rights and spoke with the detective concerning the events of May 6. Therefore, Petitioner has failed to establish a deprivation of his Sixth Amendment right to the effective assistance of counsel based on counsel's alleged failure in this regard.

Petitioner also asserts that trial counsel failed to call certain witnesses requested by Petitioner and failed to adequately interview certain witness called by the State. Petition, p. 7. According to Petitioner, counsel failed to present the testimony of two officers - Officers Ferrel Young and Eric Richardson - who were involved in the events of May 6. *Id.*, p. 8. Petitioner also claims that counsel failed to "state whether she touched based (sic) with any of the witnesses testifying against Petitioner." *Id.*

Although a pro se litigant is entitled to a liberal construction of his pleadings, he is nonetheless obligated to "state the facts supporting each ground." Rule 2(b), Rules Governing Section 2254 Cases. The broad reading of the petition does not relieve a petitioner "of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[N]aked allegations" in a habeas petition are insufficient to establish an entitlement to relief. *Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) (*per curiam*). Petitioner fails to support this claim with any showing that his counsel's alleged inadequate investigation of the State's witnesses and/or failure to call additional witness prejudiced his defense. Without a showing of actual prejudice, Petitioner cannot establish a deprivation of the Sixth Amendment right to counsel in this regard.

Petitioner has failed to establish that there is a reasonable probability the result of the trial would have been different absent counsel's alleged deficiencies. Accordingly, Petitioner has failed to demonstrate constitutionally ineffective assistance of trial counsel and this claim fails to state a claim for relief.

2. Failure to Give an 85% Instruction - Ground Six

In Ground Six Petitioner alleges, as in his post-conviction proceeding, that the trial court and trial counsel failed to inform the jury that he would have to serve 85% of his sentence before being eligible for parole or before receiving any earned credits that would reduce his sentence. Petition, p. 8. The OCCA applied a procedural bar to this claim, but also concluded that the district court correctly found that, in fact, "the jury was instructed regarding the '85% Rule.'" Response, Ex. 6, p. 2.

Petitioner has not rebutted the factual finding made by the OCCA concerning the jury instructions that were given at trial, and therefore, the OCCA's factual finding is presumed correct. 28 U.S.C. § 2254(e)(1). In any event, Respondent has submitted evidence that the jury was instructed: "A person convicted of robbery with firearms conviction shall be required to serve not less than eighty-five percent (85%) of the sentence imposed before becoming eligible for consideration for parole and shall not be eligible for any credits that will reduce the length of imprisonment to less than eighty-five (85%) of the sentence imposed." Response, Ex. 8 (Instruction No. 25); *see also* Tr., p. 245-248 (*in camera* discussion of proposed jury instructions, including the 85% instruction). Petitioner has failed to show that he is entitled to habeas relief on this claim.

3. Cumulative Error - Ground Seven

Petitioner alleges, as he did in his application for post-conviction relief, that cumulative error deprived him of a fair trial. Petition, p. 8. However, as discussed *supra,* Petitioner has failed to show any error with respect to the issues raised on direct appeal and in his post-conviction proceeding. In reviewing a claim of cumulative error, the Court may only consider actual errors for purposes of determining whether a due process violation has occurred. See *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002) ("[A] cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.") (citing *United States v. Rivera*, 900 F.2d 1462, 1470-71 (10th Cir. 1990); *see also Workman v. Mullin*, 342 F.3d 1100, 1116 -17 (10th Cir. 2003). Therefore, as Petitioner has failed to show any error, his cumulative error claim is without merit. Ground Seven of the petition should be denied.

4. Ineffective Assistance of Appellate Counsel - Ground Four

In his fourth ground for relief, Petitioner contends that he was denied constitutionally effective assistance of appellate counsel. Petition, p. 6. As support for this claim, Petitioner alleges that his appellate counsel failed to assert meritorious claims based on (1) ineffective assistance of trial counsel; (2) the trial court's failure to issue a jury instruction on the 85% Rule, *i.e.*, parole eligibility; and (3) cumulative error. *Id.*

To show ineffective assistance of appellate counsel, Petitioner must satisfy the familiar two-part test for ineffective assistance established in *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Under *Strickland*, Petitioner "must establish that (1) counsel's

performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different." *Hain*, 287 F.3d at 1231. Because the OCCA denied Petitioner's claims of ineffective assistance of appellate counsel on the merits in his post-conviction proceeding, ordinarily the Court's review would be limited to determining whether the petitioner can show that the state court's disposition is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In its order affirming the denial of Petitioner's application for post-conviction relief, the OCCA correctly paraphrased *Strickland*'s two-prong inquiry when it addressed Petitioner's ineffective assistance of appellate counsel claim. Response, Ex. 6, p. 3. (citing *Strickland*, 466 U.S. at 687). However, the OCCA also set forth a different standard for analyzing appellate counsel's performance, stating that the "[f]ailure of counsel to raise each and every issue is not determinative of ineffective assistance of counsel and counsel is not required to advance every cause of argument *regardless of merit*." *Id.* (emphasis added). The Tenth Circuit has "explicitly disavowed this standard as inconsistent with *Strickland*." *McGee v. Higgins*, 568 F.3d 832, 838-39 (10th Cir. 2009) (citing *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).[15] Because the OCCA

_____

[15]In *Cargle*, the Tenth Circuit explained its reasoning:

It is clearly wrong, as a matter of federal law, to require as a necessary condition for relief under *Strickland*, something beyond the obvious merit of the omitted claim. The very focus of a *Strickland* inquiry regarding

(continued...)

used a standard of review which is contrary to federal law in its decision regarding Petitioner's ineffective assistance of appellate counsel claim, the decision on this issue is "not entitled to deference." *McGee*, 568 F.3d at 839. Pursuant to *McGee*, this Court reviews Petitioner's ineffective assistance of appellate counsel claim using the two-part cause and prejudice test set forth in *Strickland. Id.* A court need not address the "cause" part of the *Strickland* test if it is "'easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice.'" *Id.* (quoting *Strickland*, 466 U.S. at 697). To determine whether Petitioner's appellate counsel was ineffective, the Court must consider the merits of the underlying claims. *Id.*

As independent grounds for relief, Petitioner has asserted in the petition that he received ineffective assistance of trial counsel (Ground Five), that the trial court erred by failing to instruct the jury that he would be required to serve 85% of his sentence before becoming eligible for parole consideration; (Ground Six), and the cumulative effect of errors at trial deprived Petitioner of a fair trial (Ground Seven). The undersigned has evaluated all of these claims in the foregoing sections of this Report and Recommendation and determined

---

[15](...continued)
performance of appellate counsel is upon the merits of omitted issues, and no test that ignores the merits of the omitted claim in conducting its ineffective assistance of appellate counsel analysis comports with federal law. A sufficiently meritorious omitted claim certainly can, by itself (or in relation to other issues that counsel did pursue), establish constitutionally deficient performance by appellate counsel.

*Cargle*, 317 F.3d at 1205.

that none has merit. Thus, appellate counsel was not ineffective for failing to press arguments based upon these claims on appeal. If the issue an attorney failed to raise lacks merit, the attorney's failure to raise it does not constitute constitutionally ineffective assistance of counsel. *Dennis v. Poppel*, 222 F.3d 1245, 1250 (10th Cir. 2000).

Accordingly, Petitioner has failed to satisfy the prejudice prong of *Strickland*. It is therefore recommended that habeas relief be denied on the ground that appellate counsel was ineffective.

## RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Further, Petitioner's Motion for Leave to Expand the Record [Doc. No. 29] should be granted to the extent the Court has considered the attached Application for Post-Conviction Relief. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by May 17, 2010, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 27th day of April, 2010.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE